**ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant,**

v.

**James Marvin O'MERRY, Appellee.**

**No. 01–85–00015–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 5, 1987.
Rehearing Denied March 12, 1987.

James L. Ware, Otto D. Hewitt, III, McLeod, Alexander, Powel & Apffel, Galveston, for appellant.

Carlos Garza Martin, Carmona, Cruse, Garza & Bunce, Galveston, for appellee.

Before SAM BASS, KEITH and DUGGAN, JJ.

## OPINION

SAM BASS, Justice.

The appellee, James Marvin O'Merry, brought this F.E.L.A. action against appellant, Atchison, Topeka and Santa Fe Railway Company ("Santa Fe"), alleging that he sustained back injuries while working as a brakeman for Santa Fe. The case was tried to a jury, which awarded O'Merry a total sum of $606,000 as damages, but that award was reduced to $454,500 because of the jury's finding that O'Merry was 25% negligent. The recovery was further reduced by a remittitur of $240.30, so the final judgment awarded O'Merry the sum of $454,259.70.

Santa Fe's first four points of error assert that the judgment must be reversed because of testimony elicited by O'Merry's counsel that his client would have to pay 40% of any recovery as attorney's fees.

Although the trial court promptly sustained Santa Fe's objection and instructed the jury to disregard the testimony, Santa Fe argues that this did not prevent prejudice.

The challenged testimony is as follows:
By Mr. Garza:
Q. The judgment that you get, you're going to have to pay us 40%; isn't that right?
Mr. Ware: Objection.
Q. (By Mr. Garza): Any judgment you get from the jury, you're going to have to pay us 40%; isn't that right?
A. Yes sir.

After a bench discussion with counsel, the trial court sustained Santa Fe's objection and instructed the jury to "disregard the exchange and interchange of statements of counsel. You'll disregard any reference to attorney's fees and, furthermore, to who's obligated to pay the medical expenses."

O'Merry admits that the testimony was improper, but he contends that it was provoked by Santa Fe's questions, in violation of his motion in limine, with respect to his entitlement to receive payment of his medical expenses from a collateral source, Santa Fe Hospital Association.

■ We need not decide whether the challenged testimony was invited or provoked, because we conclude that any error in eliciting the testimony was cured by the court's instruction to disregard. Santa Fe does not complain of any jury misconduct, and it confines its allegations to the "possible" consequences of such allegedly improper testimony. Thus, the question is strictly whether the testimony was so prejudicial that it was not cured by the court's instruction to disregard. We hold that the error, if any, was harmless, because the jury would probably have reached the same conclusion from the evidence without regard to the improper testimony. *See Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979); *see also Luna*

*v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 120 (Tex.1984).

Most of Santa Fe's remaining points of error challenge the sufficiency of the evidence to support the jury's verdict. In an action brought under the Federal Employers Liability Act, 45 U.S.C.S. secs. 51–60 (Law Co-op.1981) ("F.E.L.A."), the inquiry presented is whether the conclusion may reasonably be drawn from the evidence that negligence of the employer played any part at all in the injury. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506–07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957). The reviewing court must determine whether the evidence is legally sufficient to support the verdict. *Rogers*, 352 U.S. at 508, 77 S.Ct. at 449; *Tennant v. Peoria & Pekin Union Railway Co.*, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944); *St. Louis Southwestern Railway Co. v. Greene*, 552 S.W.2d 880 (Tex.Civ.App.—Texarkana 1977, no writ).

The award to O'Merry was based upon the following jury findings in response to the special issues:

5A. Past physical pain and mental anguish: $10,000.

5B. Past physical impairment: $6,000.

5C. Loss of past earnings: $50,000.

5D. Future physical pain and mental anguish: $45,000.

5E. Future physical impairment: $15,000.

5F. Lost future earning capacity: $450,000

6. Past medical expenses and hospital care: $15,000.

7. Future medical expenses: $15,000.

In reviewing legal sufficiency points, we will consider only the evidence and inferences therefrom that tend to support the judgment and will disregard all evidence and inferences to the contrary. *International Armament Corp. v. King*, 686 S.W.2d 595 (Tex.1985).

In its fifth point of error, Santa Fe challenges the sufficiency of the evidence to support the award of $450,000 for O'Merry's lost future earning capacity, and $50,000 for his lost past earnings. Santa Fe also argues that O'Merry's expert economist failed to apply the requisite elements for determining such damages.

O'Merry introduced testimony regarding his past earnings, both before and after the accident, which showed that he was 37 years old and a head brakeman for Santa Fe. He went to work for Santa Fe in March 1977 as a brakeman-switchman, and in 1978 was named a head brakeman. In that year, he earned $26,630; in 1979, $33,235; in 1980, he earned $35,794; in 1981, $33,928; in 1982, he earned $19,628.73; and in 1983, he earned $22,847. O'Merry testified that in 1981, his earnings dropped because his doctor put him "in the yard," and his earnings dropped again in 1982, because he was given a 60–day suspension to recover from hemorrhoid surgery. In 1983, he underwent surgery and was determined to have a permanent physical impairment of 10%, so he was instructed to get a desk job. He missed work for 5½ months in 1983, due to heart by-pass surgery. Since November 1983, he has entered a real estate school to learn a new trade.

We find this testimony to be sufficient to support the jury's award of $50,000 for lost past income.

O'Merry also presented expert testimony regarding the present value of the loss of his future income. O'Merry's expert witness, an economist, projected O'Merry's work-life expectancy through the year 2002. Computing O'Merry's lost earnings based on an estimate of his anticipated income, the economist projected the earnings that O'Merry could receive if he worked at his 1984 salary, using a 5.4% yearly industry increase, to age 61, then at a reduced rate from age 62–65, and finally at a retirement-benefit rate after 65 through age 74. Using this analysis, the witness computed O'Merry's lost earnings at $631,654 through age 61; $508,481 for the next 19 years; $16,676 between ages 62 and 65; and $60,670 between the ages of 66–74. Based on information published by the U.S. Government and on his own investigation, the economist applied a 3.4% discount factor to the constant figure of $44,174 for each year through 2002. He also

analyzed the effect of federal income tax on O'Merry's future wages, assuming offsetting factors for social security and other tax-related factors.

The jury returned an award of lost future earnings in the amount of $450,000, which is much less than the total amount of earnings projected by the economist. Also, the economist's projections did not include a forecast of inflation rates.

■ In calculating damages, it is assumed that but for the injuries suffered, the injured party would have continued to work and receive payment until retirement, disability, or death. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533, 103 S.Ct. 2541, 2548, 76 L.Ed.2d 768 (1983). Although Santa Fe asserts that the economist's testimony failed to apply the requisite elements of damages, it has not supported that general assertion by argument in its brief. We hold that the evidence is sufficient to support the jury's award, and we overrule the fifth point of error.

In Santa Fe's sixth and seventh points of error, it contends that the trial court erred and abused its discretion in refusing to submit its tendered instructions to the jury.

Santa Fe first contends that the trial court acted in a biased and prejudiced manner in denying its proposed instructions, and it argues that this behavior violated the court's duty to remain impartial and not act as an advocate for either party.

We have reviewed the record in this respect, and conclude that this argument is without merit.

Santa Fe next contends that the trial court erred in refusing to instruct the jury that if it found that Santa Fe was negligent and the proximate cause of O'Merry's injury, and also found that O'Merry himself was negligent, and that his negligence contributed in part to his injury, it should reduce Santa Fe's damages in proportion to the amount of O'Merry's negligence.

Santa Fe's proposed instruction is a misstatement of the law. Tex.R.Civ.P. 277 states, in pertinent part, that:

[i]n any case in which issues are raised concerning the negligence of more than one party, the court shall submit an issue inquiring what percentage, if any, of the negligence that caused the occurrence in question is attributable to each of the parties found to have been negligent, and *shall instruct the jury to answer the damage issues without any reduction because of negligence, if any, of the person injured.* (Emphasis added.)

■ We hold that the trial court correctly refused to submit Santa Fe's requested instruction that the jury reduce the plaintiff's damages in proportion to the amount of his negligence. *Id.*

Santa Fe also contends that the trial court committed reversible error in refusing to submit the following two requested instructions:

2. An injured party is under a legal obligation to mitigate his damages, that is, to minimize the economic loss resulting from his injury, by resuming gainful employment as soon as such can reasonably be done. And if he fails to take reasonable steps to assist in effecting a healing of his injury so as to enable him to return to work, or if he does not resume available employment even though he is physically able to do so, such person may not recover damages for earnings lost after the date on which he was or reasonably could have been able to return to some form of gainful employment.

3. This is a negligence action. This means that before plaintiff can recover he must prove that his injury resulted in whole or in part from the negligence or fault of defendant. This is not to be confused with a workmen's compensation case. Workmen's compensation involves an insurance arrangement under which an employer pays for the injury of an employee regardless of negligence or fault of the employer. Therefore, you must disregard any personal views you may have respecting so-called "on-the-job" injuries and you must apply the rule of law that plaintiff may not collect any damages in this case unless it is first shown that his injury resulted in whole

or in part from defendant's negligence or fault.

■ The only function of an explanatory instruction in the court's charge is to aid and assist the jury in answering the issues submitted. *See Dorman v. Langlinais,* 592 S.W.2d 650, 652 (Tex.Civ.App.—Beaumont 1979, no writ). The trial court must give definitions of legal and other technical terms, *Bolling v. Baker,* 671 S.W.2d 559, 566 (Tex.App.—San Antonio 1984, writ dism'd), *cert. denied,* ── U.S. ──, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985), but is not required to give other instructions, if they do not aid the jury. *Id.; Ortiz v. O.J. Beck & Sons, Inc.,* 611 S.W.2d 860, 868 (Tex.Civ.App.—Corpus Christi 1980, no writ).

■ We find that the instructions proposed by Santa Fe would not have assisted the jury in entering a correct verdict. We therefore hold that the trial court did not abuse its discretion in refusing to submit the requested instructions. *Houston National Bank v. Biber,* 613 S.W.2d 771, 775–76 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). We overrule Santa Fe's sixth and seventh points of error.

In its eighth, ninth, tenth, and eleventh points of error, Santa Fe contends that the trial court erred in submitting Special Issues 1 and 2, and in rendering judgment on these special issues, because they are in irreconcilable conflict.

Special Issue Number 1 asked:

Do you find from a preponderance of the evidence that Atchison, Topeka, and Santa Fe Railway Company, was negligent in failing to provide a reasonably safe switch for James M. O'Merry and that such negligence was a legal cause of damage to James M. O'Merry?

To this, the jury responded, "No."

Special Issue Number 2 asked:

Do you find from preponderance of the evidence that Atchison, Topeka, and Santa Fe Railway Company was negligent in failing to *maintain* the switch in question in a reasonably safe condition for use by James M. O'Merry and that such negligence was a legal cause of damages

to James M. O'Merry? (Emphasis added.)

To this issue, the jury responded, "Yes."

■ A railroad employer has a continuing, non-delegable duty: (1) to furnish its employees safe and suitable instrumentalities, equipment, and appliances; and (2) to inspect *and maintain* them so that the employee may carry on his work with reasonable safety. *St. Louis Southwestern Railway Co. v. Greene,* 552 S.W.2d at 880.

■ The jury was asked by Special Issue No. 1 to decide whether Santa Fe had failed to provide O'Merry with a "reasonably safe switch," and by Special Issue No. 2 to determine if Santa Fe had failed to "maintain the switch." It was Santa Fe's duty not only to provide O'Merry with "a reasonably safe switch," but also to "maintain the switch" in a safe condition. *Id.* at 880. There is no irreconcilable conflict in the two issues, and we adopt that construction that avoids a conflict in the answers. *Bender v. Southern Pacific Transportation Co.,* 600 S.W.2d 257 (Tex.1980).

Santa Fe's points of error eight, nine, ten and eleven are overruled.

In its points of error 12 through 14, 17, and 18, Santa Fe challenges the sufficiency of the evidence to support the jury's findings on the special issues relating to loss of past earnings ($50,000); future physical pain and mental anguish ($45,000); future physical impairment ($15,000); and future medical expenses ($15,000).

We have previously reviewed and found the evidence on the award of past earnings to be sufficient in our discussion of point of error five.

■ O'Merry offered medical testimony showing: (1) that he could expect future back pain; (2) a predisposition to arthritis; and (3) manifest symptoms of worry and anxiety. O'Merry testified that he became depressed when he realized he could no longer work for the railroad. He testified that he still felt sore upon awakening in the mornings and after sitting too long, and that his wife has supplied the majority of the income since his surgery. This evidence, coupled with the other evidence dis-

cussed above, supports the jury award for future physical pain and mental suffering.

O'Merry also offered medical testimony tending to show that the back is never again as strong, and is at risk, after suffering a herniated lumbar disc. The medical expert testified that O'Merry cannot lift over 25 pounds; that he will probably have future back problems, controllable only with prescription medication; and that his back condition makes him more susceptible to future injury. There was evidence that his back problems will probably last the rest of his life; that he is unable to lift his grandchildren or help his wife carry groceries; and that he cannot continue his hobbies of hunting and fishing. This testimony is sufficient to support O'Merry's award of future physical impairment.

The medical expert also testified that O'Merry would probably have to make office visits to his doctor for the remainder of his life; that his condition would be more symptomatic during cold weather, thereby necessitating more medication; and that his prescription medication currently costs approximately $50 per month. This evidence is sufficient to support his award of future medical expense.

We overrule points of error 12, 13, 14, 17, and 18.

In its points of error 15 and 16, Santa Fe contends that the trial court erred in submitting Special Issue No. 6 because O'Merry stipulated to the amount of his past medical expenses. Santa Fe correctly points out that the stipulation of O'Merry's past medical expenses was $240.30 less than the amount found by the jury for past medical expenses. However, O'Merry subsequently remitted the difference between the stipulation and award. No reversible error is shown. Tex.R.App.P. 81. We overrule points of error 15 and 16.

In its 19th point of error, Santa Fe contends that the evidence is both legally and factually insufficient to support the jury's awards for past physical pain and mental anguish ($10,000); past physical impairment ($6,000); lost past earnings ($50,000); future pain and suffering (45,000); future

physical impairment ($15,000); past medical expenses ($15,000); and future medical expenses ($15,000).

There was testimony that O'Merry had been in pain during the years since he had first started treatment in August 1978, and that he went to work even though he was in pain. There was expert testimony that, based upon reasonable medical probability, his injury set in motion the deterioration of the herniated disc. As stated before, there was testimony that his back injury prevented him from performing his family duties and hobbies as he once did. There was also testimony that the back is never the same after a herniated lumbar disc, and that this type of injury produced worry and anxiety in the patient. It was also shown that O'Merry's wife supplied the majority of the family income after his surgery, which made him feel bad, because he no longer feels that he is much of a provider. This testimony, as well as that reviewed earlier, was legally and factually sufficient to support the jury's awards. Contrary to Santa Fe's argument, the awards were not erroneous merely because O'Merry's medical expert failed to testify that O'Merry would have future medical expenses, pain, or suffering, and that O'Merry probably would not need future surgery if his condition remained as it was. Neither was O'Merry's evidence necessarily refuted by the fact that there were periods of time that he felt no pain, and that some of his pain was due to his failure to lose weight. It was the jury's province to decide the weight to be given the evidence, including the testimony showing that O'Merry's loss of work was to some extent due to non-accident related illnesses.

We overrule Santa Fe's 19th point of error.

In points of error 20 and 21, Santa Fe argued that the court abused its discretion in refusing to require a remittitur of "clearly excessive" damage awards.

A jury's award of damages will not be disturbed on the ground that it is excessive if there is evidence to sustain it, *Costa v. Storm*, 682 S.W.2d 599, 604 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.),

and if there is no evidence that it is the result of bias or prejudice. *Union Bottling Co. v. McDaniel,* 546 S.W.2d 876, 880 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). We have found that the evidence supports the jury's award, and we find no basis for disturbing the jury's verdict.

We overrule these points of error.

In point of error 22, Santa Fe challenges the sufficiency of the evidence to support the jury's finding that it was negligent in failing to maintain the switch in a reasonably safe condition. In its 23rd point of error, it contends that the cumulative effect of all trial errors probably caused the rendition of an improper verdict and judgment.

We find the evidence sufficient to support the jury's findings. There was evidence from which the jury could reasonably have inferred that the switch was unsafe because of the lack of adequate maintenance, and that it had been in that condition for a sufficient length of time for Santa Fe to have discovered and corrected it. O'Merry testified that when he pulled the switch, it "hung up" on him, causing him to be jerked back, which in turn caused a sharp pain in his back.

We overrule Santa Fe's 22nd point of error. For all the reasons earlier stated, we also overrule the 23rd point of error.

The judgment of the trial court is affirmed.